UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| HATTIE E. PHILLIPS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:18-CV-478-HBG |
| | ) |
| ANDREW M. SAUL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 15].

Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 12 & 13] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19].  Hattie E. Phillips ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Andrew M. Saul ("the Commissioner").  For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On December 5, 2014, Plaintiff protectively filed an application for disability insurance benefits and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. and 1381 *et seq*., claiming a period of disability that began

---

[1] Andrew M. Saul was sworn in as the Commissioner of Social Security on June 17, 2019, during the pendency of this case.  Therefore, pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the Defendant in this case.

on February 15, 2012.  [Tr. 14, 43–46, 89–90].  After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ.  [Tr. 56].  A hearing was held on May 2, 2017.  [Tr. 802–40].  On November 27, 2017, the ALJ found that Plaintiff was not disabled. [Tr. 14–25].  The Appeals Council denied Plaintiff's request for review on September 7, 2018 [Tr. 3–7], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on November 8, 2018, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act.  [Doc. 1].  The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through March 31, 2017.

2.  The claimant has not engaged in substantial gainful activity since February 15, 2012, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: degenerative disc disease; anxiety; and depression (20 CFR 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except can lift, carry, and push or pull  up to twenty pounds occasionally and ten pounds frequently.  She can sit for six hours and stand/walk for six hours in an eight-hour day with normal

breaks. The claimant can frequently reach overhead bilaterally. She can occasionally balance, stoop, kneel, crouch and crawl. The claimant can occasionally climb ladders, ropes, and scaffolds. She can have occasional contact with the public and understand, remember, and carry out simple instructions and task. She can adapt to work place changes that are occasionally and gradually introduced.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 5, 1978 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 15, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 16–24].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled

pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision

was reached through application of the correct legal standards and in accordance with the

procedure mandated by the regulations and rulings promulgated by the Commissioner, and

whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

IV.    **DISABILITY ELIGIBILITY**

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

if his physical or mental impairment or impairments are of such

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her*

*v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.     ANALYSIS

Plaintiff asserts that the ALJ's disability decision is not supported by substantial evidence in several regards.  First, Plaintiff claims that the ALJ improperly weighed the opinion of psychological consultative examiner, Tracy Allred, Ed.D.  [Doc. 13 at 12–18].  Additionally, Plaintiff alleges that the ALJ erred by granting great weight to the opinions of the nonexamining state agency consultants who did not review a complete medical record, including her treatment with a therapist beginning in 2015.  [*Id.* at 18–19].  Lastly, Plaintiff asserts that the ALJ "failed to properly reconcile her RFC determination with the moderate limitations that she found at Step 3, which were not properly supported by objective medical evidence."  [*Id.* at 19].  The Court will review Plaintiff's assignments of error in turn.

### A.     ALJ's Treatment of Medical Opinions

#### 1.     Dr. Allred's Opinion

Plaintiff claims that the ALJ failed to explain her reasoning for not adopting Dr. Allred's opinion, and "did not address Dr. Allred's specific opinion that Plaintiff would have moderate to marked limitations in responding appropriately to usual work situations and to changes in a routine work setting."  [*Id.* at 13, 17].  Plaintiff maintains that while the ALJ referenced objective medical evidence and stated that the "overall objective evidence in total falls short of marked limitation" in social interaction [Tr. 22], the ALJ "did not actually use this evidence in finding moderate limitations."  [Doc. 13 at 17].  Plaintiff states that Dr. Allred's opinion is supported by her treatment records with Carolynn Carson, M.S., as well as Dr. Allred's examination findings.

The Commissioner responds that the ALJ appropriately found that the opinion was entitled to some weight, and that the overall record supported moderate mental limitations. [Doc. 19 at 12]. Further, the Commissioner asserts that the ALJ accounted for the opined moderate to marked limitation in responding appropriately to usual work situations and to changes in a routine work setting in Dr. Allred's opinion by restricting Plaintiff to work involving only occasional and gradually-introduced workplace changes. [*Id.* at 12].

Dr. Allred consultatively examined Plaintiff on June 13, 2017. [Tr. 794]. Dr. Allred performed a clinical interview and mental status examination, and reviewed Plaintiff's personal and family history, vocational history, current symptomatology, and activities of daily living. [Tr. 794–96]. Dr. Allred diagnosed persistent depressive disorder (rule out major depressive disorder) and rule out unspecified personality disorder. [Tr. 796]. Therefore, Dr. Allred opined that Plaintiff's ability to understand and remember was not significantly limited; her ability to sustain concentration and persistence was mildly to moderately limited due to symptoms of depression; her social interaction was moderately to markedly limited due to symptoms of depression as well as the possibility of a personality disorder; and her ability to adapt and tolerate stress associated with daily activities was moderately limited due to symptoms of depression as well as the possibility of a personality disorder. [Tr. 796–97].

Dr. Allred also completed a medical source statement of Plaintiff's abilities to perform mental work-related activities, and first opined that Plaintiff's ability to understand, remember, and carry out instructions was not affected by her impairments. [Tr. 798]. Dr. Allred further opined that Plaintiff had moderate to marked limitations in the ability to interact appropriately with the general public, supervisors, and co-workers, as well as respond appropriately to usual work situations and to changes in a routine work setting. [Tr. 799].

In the disability decision, the ALJ reviewed Dr. Allred's opinion in detail [Tr. 21] and noted that "[w]hile Dr. Allred gave the range of mildly to moderately in concentration and persistence, the overall objective evidence supports a finding of moderate limitations in this area; however, with respect to the moderate to marked limitations cited for social interaction, the overall objective evidence in total falls short of marked limitations and supports a finding of moderate limitations in this area." [Tr. 22].

Opinions from non-treating sources are never assessed for controlling weight but are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). These opinions are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Id.* (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). Ultimately, there is no rule that requires an articulation of each of these factors. *Albaugh v. Comm'r of Soc. Sec.*, No. 14-CV-10963, 2015 WL 1120316, at *6 (E.D. Mich. Mar. 11, 2015).

The ALJ is not required to give "good reasons" for the weight assigned to the opinions of non-treating and examining consultants, as "this requirement only applies to treating sources." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007)). However, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . ." 20 C.F.R. § 416.927(e)(2)(ii). Social Security Ruling (SSR) 96–6P provides that, although "[a]dministrative law judges . . . are not bound by findings made by State agency . . . physicians

and psychologists . . . they may not ignore these opinions and must explain the weight given to the opinions in their decisions."  1996 WL 374180, at *3 (July 2, 1996).

The Court notes that the ALJ's failure to assign a specific weight to the opinion of a non-treating physician has been found to be harmless error when the ALJ's RFC determination is more restrictive than the medical opinion or where the ALJ reviews the opinion throughout the RFC determination.  *See, e.g.*, *Marritt v. Comm'r of Soc. Sec.*, No. 3:18-CV-119, 2019 WL 95553, at *6 (N.D. Ohio Jan. 3, 2019) ("The fact that the ALJ did not assign a specific weight to Dr. Onamusi's opinion is of little significance here.  The ALJ's RFC determination was more restrictive than Dr. Onamusi's opinion.  Marritt does not explain how he was prejudiced by the ALJ's failure to state the specific weight assigned to Dr. Onamusi's opinion."); *Bays v. Colvin*, No. 2:15-CV-170, 2016 WL 4384741, at *2 (E.D. Tenn. Aug. 17, 2016) (holding "the error in failing to explicitly state the weight given to [a consultative examiner's opinion] was harmless[, as] [t]he ALJ discusses the substance of [the consultative examiner's] opinion in multiple sections of his opinion and noted the deficiencies he found in [the] opinion"); *Rearden v. Colvin*, No. 4:15-CV-070-HBB, 2016 WL 1629377, at *8 (W.D. Ky. Apr. 22, 2016) ("Though the ALJ here did not assign specific weight to the state agency psychologists, it can be inferred from the decision that the ALJ rejected their findings.").  Therefore, the fact that the ALJ did not assign a specific weight to Dr. Allred's opinion on its own does not constitute a basis for remand.

However, Plaintiff claims the ALJ improperly failed to address Dr. Allred's opinion that she would have moderate to marked limitations in responding appropriately to usual working situations and changes in a routine work setting, as well as that Dr. Allred's opinion was supported by the examination findings.  Further, Plaintiff asserts that the ALJ failed to explain her reasoning for not adopting portions of the opinion.

Ultimately, the Court finds that the ALJ's treatment of Dr. Allred's opinion is supported by substantial evidence, as the ALJ found that Plaintiff had more restrictive limitations in concentration and persistence, while also finding that the objective medical record only supported moderate limitations in social interaction. *See, e.g.*, *Bays*, 2016 WL 4384741, at *2 ("It is clear that the ALJ did not give Dr. Wireman controlling authority because the ALJ concludes that the claimant was not as limited as Dr. Wireman concluded.").

Further, the Sixth Circuit has held the failure to assign weight to the opinion of a consultative examiner may constitute harmless error if the ALJ's decision is otherwise supported by substantial evidence. *See Dykes ex. rel. Brymer v. Barnhart*, 112 F. App'x 463, 468 (6th Cir. 2004) ("[I]f the refusal to even acknowledge the opinion of a treating physician was harmless error in *Heston*, then the ALJ's failure in the present case to discuss thoroughly the opinion of a consultative examiner does not warrant reversal.") (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001)).  The ALJ noted that Plaintiff's previous individual outpatient therapy showed good progress, and reviewed Plaintiff's counseling with Ms. Carson at Ridgeview from October 16, 2015 through April 27, 2017 as indicating "that she made great strides and progress i[n] working through her issues, completes her homework assignments, and successfully uses emotion regulation management techniques."  [Tr. 21].  Additionally, the ALJ reviewed Dr. Allred's opinion and examination findings in great detail, including noting that Plaintiff has never been hospitalized for mental health symptoms, her treatment for mental health symptoms occurred approximately four years before the decision, her "[p]sychomotor behavior was restless and attitude was cooperative," and "[h]er speech was normal and she presented with an appropriate affect and somewhat anxious mood."  [*Id.*].

While Plaintiff argues that Dr. Allred's opinion is supported by her examination findings

and Ms. Carson's treatment notes from therapy, the ALJ is tasked with interpreting the medical evidence and the Court finds that the ALJ's interpretation was within her "zone of choice." *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

Therefore, Plaintiff's remaining contention is that the ALJ failed to address Dr. Allred's opinion that she would have a moderate to marked limitation in responding appropriately to usual work situations and to changes in a routine work setting. [Doc. 13 at 13, 17]. The Commissioner responds that the ALJ "reasonably accounted for such a limitation by restricting Plaintiff to work involving only occasional and gradually-introduced workplace changes." [Doc. 19 at 12].

The ALJ alone is tasked with the responsibility of assessing a claimant's RFC. 20 C.F.R. § 416.1546(c). "Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). Accordingly, the "ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Id.* The Court finds that the ALJ considered Dr. Allred's opinion, and found that the record supported only moderate limitations in social interaction and concentration and persistence. As Dr. Allred was not a treating

physician, the ALJ was not required to undergo a controlling weight analysis or provide good reasons for not affording the opinion controlling weight, and the Court finds that the discussion of the opinion allows the Court to trace the ALJ's analysis. *See, e.g.*, *Maxwell v. Comm'r of Soc. Sec.*, No. 2:17-cv-835, 2018 WL 2173591, at *10 (S.D. Ohio May 11, 2018) ("Here, while the ALJ may not have adopted every possible limitation opined by the state agency consultants and Dr. Sours, the ALJ's mental RFC determination was supported by substantial evidence and is not inconsistent with the medical opinions in the record."), *report and recommendation adopted by*, 2018 WL 2463386 (S.D. Ohio June 1, 2018).

Additionally, Plaintiff fails to demonstrate how the ALJ did not incorporate this assessed impairment in the RFC determination through the limitation to work involving only occasional and gradually-introduced workplace changes. Moreover, the challenged portion of Dr. Allred's opinion allegedly not considered in the RFC determination does not include a specific functional limitation. *Cf. Woodruff v. Astrue*, No. 1:12-CV-1752, 2013 WL 821336, at *10 (N.D. Ohio Mar. 5, 2013) ("Here, despite granting Dr. Renneker's opinion great weight, the ALJ did not include limits on Plaintiff's ability to sustain neck flexion in his calculation of her RFC. Because these limitations conflict with the RFC—as the RFC contains no limits on these activities—SSR 96–8p requires the ALJ to explain their omission. A review of the ALJ's decision reveals that he did not explain his reasons for rejecting these limitations.").

Although the ALJ did not explicitly state the weight afforded to the opinion, the Court finds that any such error was harmless, as the ALJ considered the opinion and found that the medical record supported no more than moderate limitations. *See, e.g., Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 272 (6th Cir. 2015) (indicating in dicta that "[a]lthough the ALJ did not assign a specific weight to [the consultative examiner's] opinion, he did emphasize" that the plaintiff failed

to return after the initial examination). Further, the Court finds that the ALJ's consideration of the opinion is supported by substantial evidence. Ultimately, "[r]emanding the case to have the ALJ state [s]he gave the opinion a particular weight, either some or little, would be an inefficient use of resources as it would not change the ALJ's determination based [on] the ALJ's opinion and evidence that provides substantial evidence to support the ALJ's decision." *See Bays v. Colvin*, No. 2:15-CV-170, 2016 WL 4384741, at *2 (E.D. Tenn. Aug. 17, 2016). Therefore, Plaintiff's assignments of error with respect to Dr. Allred's opinion do not constitute a basis for remand.

### 2. Nonexamining State Agency Consultants

Plaintiff asserts that the ALJ improperly afforded great weight to the opinions of the nonexamining state agency consultants, despite the fact that these physicians did not review a complete medical record. Plaintiff maintains that the nonexamining state agency consultants did not review her treatment records with Ms. Carson, which she also claims that the ALJ ignored in her RFC determination. [Doc. 13 at 18]. The Commissioner responds that although the nonexamining state agency consultants did not review Plaintiff's therapy records after their opinions, the ALJ reviewed Plaintiff's therapy notes from 2015 through 2017 in her decision. [Doc. 19 at 15].

Frank Kupstas, Ph.D., reviewed the evidence of record at the initial level of the agency's review on May 12, 2015, and first opined that Plaintiff had no limitations in understanding and memory. [Tr. 416]. Dr. Kupstas then found that with respect to sustained concentration and persistence, Plaintiff was not significantly limited in the ability to carry out simple or detailed instructions, the ability to sustain an ordinary routine without special supervision, the ability to work in coordination with or proximity to others without being distracted by them, and the ability

13

to make simple work-related decisions; and that she was moderately limited in the ability to maintain attention and concentration for extended periods, the ability to perform activities with a schedule, and the ability to work a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace. [Tr. 416–17]. Therefore, Dr. Kupstas opined that Plaintiff would be able to maintain concentration, persistence, and pace for low-level detailed tasks over a normal workday with appropriate breaks. [Tr. 418].

With respect to social interaction, Dr. Kupstas found that Plaintiff was not significantly limited in the ability to ask simple questions or request assistance, the ability to accept instructions and respond appropriately to criticism from supervisors, the ability to get along with coworkers or peers without distracting them, and the ability to maintain socially appropriate behavior; but that she was moderately limited in the ability to interact appropriately with the general public. [Tr. 417]. Dr. Kupstas opined that Plaintiff would be able to relate appropriately with supervisors and peers, as well as that she was able to interact with the general public adequately on an intermittent basis. [Tr. 418]. Lastly, Dr. Kupstas found that Plaintiff was not significantly limited with respect to adaption and able to adapt to routine changes in the workplace. [Tr. 417–18]. Robert de la Torre, Psy.D., reviewed the evidence of record at the reconsideration level on October 14, 2015, and affirmed Dr. Kupstas' findings. [Tr. 443]. The ALJ afforded great weight to Dr. Kupstas and Dr. Torre's opinions, finding that they were consistent with the overall objective medical evidence. [Tr. 23].

"State agency medical consultants . . . are 'highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act.'" *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016) (quoting Soc. Sec. Rul. 96–6p, 1996 WL 374180, at *2 (July 2, 1996)). Therefore, "[i]n appropriate

circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96–6p, 1996 WL 374180, at *3. "One such circumstance . . . [is] when the 'State agency medical . . . consultant's opinion is based on review of a complete case record.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting SSR 96–6p, 1996 WL 374180, at *3).

"[B]efore an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record. In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) (quoting *Blakely*, 581 F.3d at 409). "[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts' before assigning greater weight to an opinion that is not based on the full record." *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491, 493–94 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)). The Sixth Circuit has found that an ALJ satisfied *Blakley* by reviewing the medical evidence that was entered after the nonexamining state agency consultant's opinion, and explaining why the consultant's opinion was afforded greater weight despite the subsequent evidence. *Id.*

Although the nonexamining state agency physicians did not review the complete medical record, the ALJ summarized Plaintiff's therapy treatment notes in the decision. [Tr. 22]. As the Court has already detailed, the ALJ reviewed Plaintiff's treatment records with Ms. Carson and indicated that that "she made great strides and progress i[n] working through her issues, completes

her homework assignments, and successfully uses emotion regulation management techniques." [Tr. 21]. The ALJ also reviewed Plaintiff's medical records from Ridgeview in between Dr. Kupstas' and Dr. Torre's opinions and found that "[n]ew evidence did not indicate substantial or material change in [the] severity of [Plaintiff's] psychological symptoms or level of functioning." [Tr. 23]. The ALJ noted that "[u]dated medical evidence from Ridgeview indicated ongoing treat[ment] and medication for major depressive disorder and therapy focus was on impact of childhood abuse." [Tr. 22]. Additionally, the ALJ detailed that Plaintiff's "[m]ost recent medical management note indicated some improvement on medication with refractory irritability two days a week, [an] improved relationship with her daughter, [that she was] sleeping 8-10 hours, no suicidal/homicidal ideation and no audio/visual hallucinations." [Tr. 22–23].

In the present case, Plaintiff correctly asserts that the nonexamining state agency consultants did not review a medical record which included her continued treatment with Ms. Carson. However, the ALJ's decision reflects that she made an independent determination based on all the medical evidence and that her analysis spanned the entire record. *See Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247–48 (6th Cir. 2016) (affirming ALJ's assessment of great weight to the dated nonexamining state agency consultant's opinion, rather than the current treating physician opinion found to be inconsistent with the record, as "the ALJ's own analysis clearly spanned the entire record—through the final degenerative changes to [Plaintiff's] spine that culminated in a cervical discectomy and fusion, the last medical event included in the record"); *accord Mcwhorter v. Berryhill*, No. 3:14-cv-1658, 2017 WL 1364678, at *12 (M.D. Tenn. Apr. 14, 2017); *Quinlavin v. Comm'r of Soc. Sec.*, No. 15-cv-731, 2017 WL 583722, at *4 (N.D. Ohio Feb. 14, 2017). Therefore, the ALJ subjected the opinions to "scrutiny" sufficient to find that she considered that these nonexamining state agency consultants did not review the entire record. *See*

*Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016).

### B.      Moderate Limitations and the RFC Determination

Plaintiff asserts that "[t]he ALJ did not utilize acceptable evidence to find that Plaintiff was only moderately limited in all four areas of functioning when determining that Plaintiff did not meet or medically equal a listing." [Doc. 13 at 23]. Additionally, Plaintiff claims that "the ALJ did not properly accommodate the limitations that she did find in her RFC determination." [*Id.*].

#### 1.      Listing Analysis

Plaintiff asserts that the ALJ improperly failed to "utilize objective medical evidence" in finding moderate limitations during the step three analysis. [Doc. 13 at 22]. Ultimately, Plaintiff claims that the ALJ erred by relying too heavily on her activities of daily living while assessing the ability to understand, remember and apply information, as well as her concentration, persistence, and pace, citing *Warner v. Commissioner of Social Security*, 375 F.3d 387, 392 (6th Cir. 2004). [*Id.* at 20, 22]. With respect to social functioning, Plaintiff asserts that the ALJ improperly relied upon her ability to interact with people that she sees frequently, including her roommates and medical providers, and ignored treatment notes with Ms. Carson where Plaintiff reported struggling to react appropriately to her own family. [*Id.* at 22, 23].

The Commissioner responds that Plaintiff fails to point to specific medical evidence establishing an extreme or two marked limitations as required by Listing 12.04 or 12.06, and instead only claims that Dr. Allred's opinion establishes marked limitations in the functional area of interacting with others. [Doc. 19 at 8].

At step three of the sequential evaluation, a claimant may establish disability by demonstrating that his impairment is of such severity that it meets, or medically equals, one of the listings within the "Listing of Impairments" codified in 20 C.F.R., Part 404, Subpart P, Appendix

1. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *Foster v. Halter*, 279 F.3d 348, 352 (6th Cir. 2001). The Listings describe impairments that the SSA considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled, and entitled to benefits, but the claimant has the burden to prove that all of the elements are satisfied. *King v. Sec'y of Health & Human Servs.*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Walters*, 127 F.3d at 529. Only when an impairment satisfies all of the Listing's criteria will the impairment be found to be of listing level severity. 20 C.F.R. § 404.1525(d).

In determining whether an impairment is of listing level severity, the ALJ is tasked with comparing the medical evidence of record with a Listing's requirements. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011). However, the Sixth Circuit rejected "a heighted articulation standard" with regard to the ALJ's step three finding. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006). "If a claimant does not have one of the findings, however, she can present evidence of some medical equivalent to that finding." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 854 (6th Cir. 2011) (citations omitted). Yet, it is not sufficient to come close to meeting the conditions of a Listing. *See, e.g.*, *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1989) (affirming Commissioner's decision that Plaintiff didn't meet Listing where medical evidence "almost establishes a disability"). Plaintiff has the burden of proving that her impairments meet or medically equal the criteria of Listing 12.04 and 12.06 by pointing to specific medical findings that satisfy all of the criteria of the listing. *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 433 (6th Cir. 2016); *Wredt ex rel. E.E. v. Colvin*, No. 4:12-cv-77, 2014 WL 281307, at *5 (E.D. Tenn. Jan. 23, 2014) (citations omitted).

Listing 12.04 addresses depressive, bipolar and related disorders, while Listing 12.06 addresses anxiety related disorders. Applicable listings addressing mental health impairments contain the following criteria: (1) "Paragraph A" criteria, impairment-related symptoms; (2) "Paragraph B" criteria, impairment-related limitations; and (3) "Paragraph C" criteria, additional functional criteria. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00(A), 12.04. "The common functional limitations criteria in Paragraph B of Listing[ ] 12.04 [and 12.06]. . . require[s] the claimant to show that [her] disorder(s) resulted in an "extreme limitation of one or marked limitation of two, of the following areas of mental functioning: (1) understand, remember or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; (4) adapt or manage oneself." *See Sanders v. Comm'r of Soc. Sec.*, No. 1:18-CV-1941, 2019 WL 2570494, at *12 (N.D. Ohio June 5, 2019) (internal citations omitted), *report and recommendation adopted sub nom.*, *Sanders v. Saul*, 2019 WL 2567718 (N.D. Ohio June 20, 2019); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)(2)(b).

In the disability determination, the ALJ found that Plaintiff had moderate limtiations in understanding, remembering, or applying information. [Tr. 17]. The ALJ noted that Plaintiff stated that she has difficulty completing tasks and going to doctors visits without reminders, but also that she could prepare meals, go to doctor's appointments, take medications, and read, as well as that she was able to respond to questions from mental providers. [Tr. 17–18]. The ALJ found that Plaintiff had moderate limitations in interacting with others, as although she alleged difficulty engaging in social activities and getting along with others, she was able to live with other people, and that she had a good rapport with providers and good interactions with non-medical staff. [Tr. 18]. Next, the ALJ found that Plaintiff had moderate limitations in the ability to concentrate, persist, or maintain pace, as Plaintiff was able to prepare meals, watch TV, and read. [*Id.*]. Lastly,

the ALJ found that Plaintiff had moderate difficulties in adaption, as while Plaintiff asserted that she has difficulty dressing, she was able to self-care and care for children, and the claimant was shown to have appropriate grooming and hygiene and calm mood and appropriate affect. [*Id.*].

First, Plaintiff has failed to argue or point to specific evidence establishing that she has marked limitations in understanding, remembering, or applying information, the ability to concentrate, persist, or maintain pace, or adaption. Rather, Plaintiff asserts that Dr. Allred opined that she was moderately to markedly limited in social interaction, including the ability to interact with coworkers and supervisors, as well as the general public, and responding appropriately to usual work situations and to changes in routine work settings. [Doc. 13 at 23].

Further, the Court finds that the ALJ properly relied upon Plaintiff's daily activities in finding no more than moderate limitations in any paragraph B criteria. *See, e.g.*, *Delozier v. Saul*, No. 3:18-CV-197-DCP, 2019 WL 4647250, at *7 (E.D. Tenn. Sept. 24, 2019) ("The Court does not find that the ALJ mischaracterized Plaintiff's daily activities; but rather that she appropriately assessed the totality of Plaintiff's reported daily activities in reviewing the paragraph B criteria. Further, the ALJ noted that the state agency psychological consultants found that Plaintiff's mental impairments did not meet or medically equal any of the Listings."); *Edgington v. Berryhill*, No. 1:18CV1736, 2019 WL 2870523, at *22 (N.D. Ohio June 6, 2019) ("The Court finds substantial evidence supports the ALJ's determination Edgington has a less than marked restriction in understanding, remembering, and applying information. As the ALJ correctly notes, Edgington reported that, although it may take additional time, she is able to perform multi-step tasks such as preparing simple meals, performing household chores, shopping online, managing her checking accounts, and driving to medical appointments."), *report and recommendation adopted sub nom., Edington v. Berryhill*, 2019 WL 2896053 (N.D. Ohio July 3,

2019)

Plaintiff asserts that the Sixth Circuit "determined that while some weight is appropriate, the usage of household activities to relate to the amount of pressure that Plaintiff can handle in work is inappropriate." [Doc. 13 at 20]. However, the authority relied upon by Plaintiff, *Warner v. Comm'r of Soc. Sec.*, does not address the ALJ's consideration of daily activities in a paragraph B analysis or any listing-level criteria. *See* 375 F.3d at 392. Rather, when addressing the claimant's credibility, the Sixth Circuit in *Warner* found that "[t]he administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain." *Id.*

Plaintiff also maintains that under Social Security Ruling 85-15, the ALJ erred by relying upon her "ability to interact with people that she sees frequently and has known for years" when assessing her degree of social functioning. [Doc. 13 at 22–23]. "The Court cautions against the use of a claimant's interactions with healthcare providers when assessing the capability to interact appropriately with coworkers and supervisors." *Dorsey v. Berryhill*, No. 3:18-CV-103-HBG, 2019 WL 1140178, at *5 (E.D. Tenn. Mar. 12, 2019); *but see Bolen v. Saul*, No. 1:19-CV-34-PPS, 2020 WL 1061227, at *2 (N.D. Ind. Mar. 4, 2020) (finding ALJ properly considered claimant's ability to live with others, noted cooperation at examinations, and lack of documented problems in interactions with medical or non-medical staff when assessing ability to interact with others). However, even a "cursory discussion of a particular listing does not require remand where the ALJ's opinion as a whole demonstrates sufficient consideration of the relevant evidence." *Devault v. Comm'r of Soc. Sec.*, No. 14–11986, 2015 WL 7450399, at *2 (E.D. Mich. Nov. 24, 2015) (internal citation omitted). Here, the Court finds that the ALJ's subsequent discussion of Plaintiff's ability to interact with others, as previously detailed in this opinion, supports the finding of a

moderate limitation in social interaction.

Further, the ALJ noted that the state agency psychological consultants did not find that Plaintiff's impairments met or equaled a listing [Tr. 18], and subsequently found that Dr. Allred's opinion only supported moderate limitations. *See, e.g.*, *Thomas v. Comm'r of Soc. Sec.*, No. 1:18-CV-065, 2019 WL 1748512, at *7 (E.D. Tenn. Apr. 18, 2019) (finding substantial evidence to support the ALJ's determination that the plaintiff failed to show she met Listing 12.04, as the "ALJ sufficiently explained his decision not to assign controlling weight to Dr. Spalding's opinion" and the state agency consultants did not find that the plaintiff met any mental impairment listing).

Here, the ALJ properly relied on Plaintiff's documented daily activities and the subsequent discussion of Plaintiff's treatment records and medical opinions to conclude that Plaintiff failed to meet the paragraph B criteria of Listing 12.04 and 12.06. Accordingly, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments did not meet or equal any Listings, and Plaintiff's assignments of error do not constitute a basis for remand.

## 2. RFC Determination

Plaintiff claims that the ALJ's "RFC determination that [she] can perform simple, routine, unskilled work" does not account for a limitation on her limitations in concentration, persistence, or pace. [Doc. 13 at 19]. Therefore, Plaintiff contends that the ALJ's failure to account for a limitation in her concentration, persistence, or pace "necessitates that the ALJ did not present a complete hypothetical to the VE." [*Id.* at 21].

Initially, "Plaintiff's argument—that an ALJ's findings at Step Three, which address whether a claimant meets the requirements of a given Listing, must be incorporated into the RFC— is unsupported by case law." *Hayman v. Berryhill*, No. 3:16-cv-1998, 2017 WL 9476860, at *9 (N.D. Ohio Oct. 30, 2017). "The RFC is a subsequent determination that is distinct and separate

from Step 3." *Shinlever v. Berryhill*, No. 3:15-CV-371-CCS, 2017 WL 2937607, at \*4 (E.D. Tenn. July 10, 2017) (citing *Turbeville v. Colvin*, No. 1:12-CV-061, 2014 WL 6605483, at \*10 (M.D. Tenn. Nov. 19, 2014) ("[Step Three and the RFC] are separate steps and a finding at one step does not necessarily equate to the same finding being made at a later step.")); *see also* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at \*4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment . . . .").

Further, Plaintiff's reliance on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010), to argue that an RFC of simple, routine, and unskilled work does not accommodate moderate limitations in concentration, persistence, or pace is misplaced.

In *Ealy*, the Sixth Circuit concluded that an RFC and hypothetical question to a VE that included the limitations of "simple repetitive tasks and instruction" failed to accurately represent a medical opinion that assessed limitations of "simple, repetitive tasks *[for] [two-hour] segments over an eight-hour day where speed was not critical*." 594 F.3d at 516 (emphasis added). As later clarified in *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436–37 (6th Cir. 2014), the problem in *Ealy* was that the RFC and hypothetical question "truncated the doctor's specific restrictions." Distinguishing *Ealy*, the *Smith-Johnson* Court found "the limitation to simple, routine, and repetitive tasks adequately conveys Smith–Johnson's moderately-limited ability 'to maintain attention and concentration for extended periods'" because "[u]nlike in *Ealy*, Dr. Kriauciunas did not place any *concrete functional limitations* on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks." *Id.* at 437 (emphasis added). Further, the Sixth Circuit has more recently held that "[c]ase law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is *per se* insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke v. Comm'r of Soc.*

*Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016).

Here, Plaintiff's RFC allowing for simple instructions and tasks coincides with the nonexamining state agency psychological consultants' opinions that Plaintiff was not significantly limited in her ability to carry out simple or detailed instruction or the ability to make simple work-related decisions and sustain an ordinary routine without special supervision.  [Tr. 416–17].  Dr. Kupstas opined that Plaintiff would be able to maintain concentration, persistence, and pace for low-level detailed tasks over a normal workday with appropriate breaks.  [Tr. 418].  Similarly, Dr. Allred opined that Plaintiff's ability to sustain concentration and persistence was mildly to moderately limited, and Plaintiff's ability to understand, remember, and carry out instructions was not affected by her impairments.  [Tr. 796–98].

In addition, Plaintiff's RFC does not conflict with the moderate limitations they assessed, or the alleged moderate to marked limitations in the ability to respond appropriately to usual work situations and to changes in a routine work setting in Dr. Allred's opinion, as Dr. Allred "did not place any concrete functional limitations on her abilities to maintain attention, concentration, or pace when performing" simple and low-level detailed tasks.  *See Smith-Johnson*, 579 F. App'x at 437.  Although the ALJ found that the medical record supported only moderate limitations, the ALJ further incorporated her consideration of Dr. Allred's opinion that Plaintiff was moderately limited in the ability to respond appropriately to usual work situations and to changes in a routine work setting through the limitation to work place changes that are occasionally and gradually introduced.  *See id.* at 436–37 ("Here, the limitation to simple, routine, and repetitive tasks adequately conveys Smith–Johnson's moderately-limited ability 'to maintain attention and concentration for extended periods.' . . . Second, Dr. Kriauciunas's conclusion that Smith–Johnson is moderately limited in her ability 'to respond to changes at work' is reflected by the terms

'routine' and 'repetitive.'"); *Bennett v. Berryhill*, No. 2:17-CV-00218, 2019 WL 845821, at *9 (E.D. Tenn. Jan. 3, 2019) ("In the absence of expert recommendations identifying any work restrictions for Bennett, the ALJ was entitled to wholly reject mental limitations for purposes of the RFC and hypothetical questions. Instead, he gave Bennett the benefit of the doubt as to the severity of his mental restriction by applying a general restriction."). The Court has already found that the ALJ's treatment of Dr. Allred's opinion was supported by substantial evidence.

The RFC is the most an individual can do despite her limitations. 20 C.F.R. § 416.945(a)(1). When determining a claimant's RFC and the corresponding hypothetical, the ALJ need only include those limitations found to be "credible" and supported by the record. *See Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)). The RFC determination is expressly reserved for the Commissioner, not medical experts. 20 C.F.R. § 404.1546. Ultimately, the Court finds that the ALJ's RFC determination was supported by substantial evidence and that the ALJ accounted for Plaintiff's limitations in concentration, persistence, or pace.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 12**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Bruce Guyton
United States Magistrate Judge